**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Crim. No. 06-20111-01-KHV |
| v. ) | |
| ) | Civil No. 08-2194-KHV |
| **CIPRIANO SOTO-DIARTE,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 (Doc. #34) filed April 28, 2008 and Plaintiff's Motion To Enforce Appeal Waiver (Doc. #36) filed July 11, 2008. For reasons stated below, the Court overrules defendant's motion and sustains the government's motion.

**Factual Background**

On January 3, 2007, a grand jury indicted defendant for illegal re-entry by a previously deported alien in violation of 8 U.S.C. § 1326 and distribution of five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. See Second Superseding Indictment (Doc. #23). Defendant pled guilty to both counts. At sentencing, the Court determined that defendant was accountable for approximately 25.62 net grams of actual methamphetamine and that he possessed a firearm during the offense. Defendant's total offense level was 27, with a criminal history category III, resulting in a sentencing range of 87 to 108 months. On April 30, 2007, the Court sentenced defendant to 108 months in prison.

On April 28, 2008, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's Section 2255 motion alleges that defense counsel was ineffective

because at sentencing, (1) he did not object to the weight of methamphetamine which the Court attributed to defendant; (2) he did not object to the firearm enhancement; (3) he did not object to defendant's criminal history category; and (4) he did not file a downward departure motion.

## Analysis

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

**I.     Procedural Bar – Waiver Of Collateral Challenges (All Claims)**

A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence is generally enforceable. United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001), cert. denied, 534 U.S. 1085 (2002); United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998). The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc); see United States v. McMillon, No. 02-20062-01-JWL, 2004 WL 2660641, at *3 (D. Kan. Nov. 19, 2004).

  A. Scope of the Waiver

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement. United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004); Hahn, 359 F.3d at 1328. The Court construes the plea agreement according to contract

principles and based on what defendant reasonably understood when he entered the plea. United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004). The Court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant. Hahn, 359 F.3d at 1343.

The plea agreement states in relevant part as follows:

> **13.     Waiver of Appeal and Collateral Attack.**  Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion under Fed. Rule of Civ. Pro 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), then the defendant is released from this waiver and may appeal the sentence as authorized by Title 18, U.S.C. § 3742(a).

Plea Agreement ¶ 13. The scope of this waiver unambiguously includes the right to collaterally attack by a Section 2255 motion any matter in connection with defendant's conviction or sentence. In Cockerham, the Tenth Circuit noted that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver," but that "collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable." 237 F.3d at 1187. In this case, none of defendant's claims challenge the validity of the plea or waiver. Accordingly, such claims fall within the scope of the waiver in the plea agreement. See id.

### B.     Knowing And Voluntary Nature Of The Plea

To ascertain whether defendant knowingly and voluntarily waived his rights, the Court evaluates the language of the plea agreement and the plea petition, and the Rule 11 colloquy. Hahn, 359 F.3d at 1325. The Court conducted a thorough inquiry at the plea hearing. At that time defendant affirmed that he understood the charges against him, the maximum penalties, the rights he was waiving and the factual basis for his plea. Defendant acknowledged that his plea was free and voluntary, that no one had forced or threatened him to enter it, and that the only reason he was entering a plea of guilty was that he was in fact guilty as charged. Nothing in the record suggests that defendant's plea, or his waiver of post-conviction rights, was unknowing or involuntary. The plea petition reflects that defendant had sufficient time to discuss the matter with his attorney, that he was satisfied with his attorney's representation, and that he had read and understood the plea agreement. Finally, in his present motion, defendant does not assert that his plea was involuntary – he only complains of his counsel's performance at sentencing. In his reply brief, defendant argues that counsel talked him into pleading guilty without adequately explaining the waiver of appeal and collateral attacks, see Movant's Response To The Government's Motion To Enforce An Appeal Waiver (Doc. #39) at 2, but such a claim is refuted by the language of the plea agreement, the plea petition and the Rule 11 colloquy. Moreover, defendant does not specifically explain what aspect of the waiver he did not understand. Defendant asserts that the waiver was complex, but a cursory review of the plea agreement shows that the waiver was broad and included any appeal or collateral attack in connection with his prosecution, conviction and sentence. See Plea Agreement ¶ 13. Defendant's belated claim that he has trouble comprehending the English language is refuted by his admissions in the plea petition and plea colloquy and his thorough pro se Section 2255 motion and

reply brief which he prepared in English.[1]  In sum, defendant's waiver of his rights was knowing and voluntary.

        C.        Miscarriage Of Justice

Finally, the Court must "determine whether enforcing the waiver will result in a miscarriage of justice." Hahn, 359 F.3d at 1327.  This test is not met unless (1) the district court relied on an impermissible factor such as race; (2) defendant received ineffective assistance of counsel in conjunction with negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity or public reputation of judicial proceedings. Id.  Defendant bears the burden of demonstrating that the waiver results in a miscarriage of justice. Anderson, 374 F.3d at 959.  Here, defendant does not contend that enforcing the waiver would result in a miscarriage of justice.

The Court finds that enforcement of the waiver does not implicate any of the four factors listed above.  In particular, defendant received a sentence (9 years) which was significantly less than the statutory maximum of 20 years on the drug offense and 40 years on the firearms offense. See United States v. Green, 405 F.3d 1180, 1193-94 (10th Cir. 2005); United States v. Porter, 405 F.3d 1136, 1144 (10th Cir.) ("statutory maximum" under Hahn inquiry refers to statute of conviction), cert. denied, 546 U.S. 980 (2005).  Furthermore, enforcement of the waiver as to collateral challenges does not seriously affect the fairness, integrity or public reputation of the proceedings. See United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir.) (waiver of appellate rights enforced where

---

[1] Except for brief periods after defendant was deported in March and December of 2004, he has resided in the United States since January of 1985.  Defendant reported that except for his parents and sister, all of his family members speak English. See PSIR ¶ 79.  The PSIR indicates that though defendant has some problems writing in English, he can read and speak the language. See PSIR ¶ 87.

sentence did not exceed statutory maximum and was based on judge-made findings), cert. denied, 546 U.S. 989 (2005). The Court finds that enforcing the waiver will not result in a miscarriage of justice. In sum, defendant's claims are barred by the waiver of collateral challenges in the plea agreement.

## II.     Substantive Merit Of Defendant's Claims

Defendant's claims also lack substantive merit. To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." Walling, 982 F.2d at 449. The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988), cert. denied, 489 U.S. 1089 (1989). As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

### A.     Ineffective Assistance - Failure To Object To Amount Of Drugs (Claim 1)

Defendant argues that counsel was ineffective for failing to object to the statements of the confidential informant ("CI") in the PSIR. Defendant maintains that the CI had an incentive to lie

about the drug amounts. See Motion To Vacate (Doc. #34) at 7.  In particular, defendant argues that if the CI's statement was accurate that defendant sold one ounce of methamphetamine to the CI for $1000 and another ounce to two other individuals when defendant was present, he logically would have had $2000 in his possession when he was arrested shortly after the transactions.  In fact, defendant had $1,477 in his possession.  Defendant does not explain whether the CI observed the other purchaser give him money, but the PSIR indicates only that the CI observed defendant weigh out an ounce of methamphetamine and provide it to the other two individuals who left the residence. See PSIR ¶ 10.  Absent evidence that the CI observed the other two individuals pay defendant $1000, defendant has not shown that counsel was deficient for failure to object to the statement of the CI.

Defendant also has not shown prejudice from counsel's failure to object to the amount of drugs.  Defendant admitted to flushing approximately one pound of methamphetamine down the toilet before law enforcement arrived and storing another pound of methamphetamine at his brother's residence.  See PSIR ¶ 19.  Defendant also admitted that he took delivery of four to five pounds of methamphetamine per week since 2000.  See id.  Defendant made these admissions as part of a proffer agreement which cannot be used to determine his guideline range pursuant to U.S.S.G. § 1B1.8, but the admissions are consistent with the CI's statement that defendant sold a total of two ounces of methamphetamine on July 13, 2006 and suggest that defendant did not suffer prejudice from counsel's failure to object to the CI's statement.  Defendant's admissions are also consistent with the CI's statement that defendant supplied the CI with methamphetamine since 2001.  See PSIR ¶ 9.  Defendant has not shown that he had any meritorious objection to the CI's statement. Accordingly, counsel's failure to object to the statement was not prejudicial.

### B.      Ineffective Assistance - Failure To Object To Firearm Enhancement (Claim 2)

Defendant argues that counsel was ineffective for failing to object to the firearm enhancement in the PSIR. Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense." The commentary to that section states, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. n.3. The government bears the initial burden of proving possession of a weapon by a preponderance of the evidence. United States v. Pompey, 264 F.3d 1176, 1180 (10th Cir. 2001); United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997), cert. denied, 522 U.S. 1141 (1998); United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992). The government can satisfy this burden by demonstrating "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Pompey, 264 F.3d at 1180; United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993); see Roberts, 980 F.2d at 647. Thus, "mere proximity to the offense" may satisfy the government's initial burden. United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999); see United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1185 (10th Cir. 2004); Smith, 131 F.3d at 1400. If such possession is established, the burden shifts to the defendant to show that "it is clearly improbable the weapon was connected with the offense." United States v. Heckard, 238 F.3d 1222, 1233 (10th Cir. 2001).

Here, the government met its initial burden by showing that when officers arrested defendant at his residence, they found (1) in a kitchen cabinet, two magazines, each containing six live cartridges for a 7.62 x 25 caliber handgun and 15 additional live cartridges, and (2) in an upstairs hall closet, a TT 7.62 x 25 caliber semi-automatic handgun. Such evidence is sufficient to show a

temporal and spatial relation between defendant, the handgun and the drug trafficking activity. See Pompey, 264 F.3d at 1180; Roederer, 11 F.3d at 982; Roberts, 980 F.2d at 647; see also United States v. Medina-Cabuto, 248 Fed. Appx. 900, 904 (10th Cir. 2007) (case law and Guidelines do not require that drugs and firearms be found together in same room); United States v. Knowles, 180 Fed. Appx. 110, 113 (11th Cir. 2006) (fact guns may have been in different room of same house not enough to show clear error); United States v. Davidson, 409 F.3d 304, 312-13 (6th Cir. 2005) (not improper to apply enhancement when gun found in same residence as drugs); United States v. Keszthelyi, 308 F.3d 557, 578-79 (6th Cir. 2002) (affirming application of enhancement to defendant convicted of distributing drugs out of his home day before gun found in his home); Heckard, 238 F.3d at 1233 (government's initial burden met when it shows that weapon was located near general location where at least part of drug transaction occurred); United States v. Bautista-Macias, 12 Fed. Appx. 496, 498 (9th Cir. 2001) (affirming application of enhancement where defendant had access to firearm in same residence); Dickerson, 195 F.3d at 1188 (enhancement appropriate where firearms and drugs both located inside house which defendant, through guilty plea, acknowledged he possessed and allowed others to use for drug trafficking activities); United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998) (nexus established by proof that weapon was located nearby general location where drugs or drug paraphernalia were stored), cert. denied, 525 U.S. 1092 (1999); Roederer, 11 F.3d at 983 (same); Augustin v. United States, No. 07-cv-000777-FDW, 2007 WL 2818491, at *6 (W.D.N.C. 2007) (Section 2D1.1(b)(1) satisfied when gun located in place where drug offense took place or furthered).

Defendant apparently concedes that the government satisfied its initial burden, see Motion To Vacate (Doc. #34) at 10, but he claims that the firearm was recovered from his father's upstairs

apartment and therefore far removed from the basement area where the drug transactions took place.[2] Defendant has not shown - either at the time of sentencing or in the instant motion - that it was "clearly improbable" that the firearm seized from his residence was connected to the offense. In particular, he has not shown that he did not have access to the kitchen cabinet on the first floor and the hall closet on the second floor. Accordingly, counsel was not deficient in failing to raise this objection to the PSIR.

Even if counsel should have objected to the PSIR, defendant has not shown how counsel's performance was prejudicial. As explained above, defendant has not specifically challenged the fact that law enforcement officers found a handgun and ammunition in his residence which he used for distribution of methamphetamine. Defendant also has not explained how it was "clearly improbable" that this weapon was connected to the offense. The Court therefore finds that counsel's failure to object to the weapon enhancement in the PSIR was not prejudicial

C. Ineffective Assistance - Failure To Object To Criminal History Calculation (Claim 3)

Defendant argues that counsel was ineffective for failing to object to the criminal history calculation which erroneously applied one point for misdemeanor possession of marijuana without a tax stamp. Defendant cites Amendment 709, which was implemented on November 1, 2007, but the Sentencing Commission has not made it retroactive. U.S.S.G. § 1B1.10(c); see United States v. Archer, Nos. 06-1382, 06-1630, 06-2321, 2008 WL 2247144, at *4 (3d Cir. June 3, 2008); United States v. Godin, 522 F.3d 133, 2008 WL 1006669, at *1 (1st Cir. Apr. 10, 2008). Defendant apparently claims that counsel should have objected to his criminal history calculation based on the

---

[2] In cursory fashion, defendant also asserts that counsel was ineffective in failing to request a hearing to show that officers obtained the firearm in violation of the Fourth Amendment. See Motion To Vacate (Doc. #34) at 10 n.6. Defendant has not explained the factual basis for any such request. He therefore cannot show that counsel's failure to request a hearing was deficient or prejudicial.

rationale which the Sentencing Commission used in adopting Amendment 709. Defendant has not shown that counsel was deficient in failing to anticipate Amendment 709 or the policy rationale behind that amendment. See United States v. Pennington, 219 Fed. Appx. 805, 808 (10th Cir. 2007) (trial counsel not ineffective for failing to anticipate future developments in law); United States v. Harms, 371 F.3d 1208, 1212 (10th Cir. 2004) (Sixth Amendment does not require defense counsel to be clairvoyant); Roccisano v. United States, 936 F. Supp. 96, 103-04 (S.D.N.Y. 1996) (failure to anticipate changes in Sentencing Guidelines not deficient performance). In addition, defendant has not shown that an objection to his criminal history category would have been well taken based on then-existing law. Accordingly, he cannot show that counsel's failure to object was prejudicial. The Court overrules defendant's claim based on counsel's failure to object to his criminal history calculation.

### D.     Ineffective Assistance - Failure To File Downward Departure Motion (Claim 4)

Defendant argues that counsel was ineffective for failing to file a downward departure motion based on his deportable alien status, which makes him ineligible for detention in a minimum security facility for the last ten per cent of his sentence to adjust to re-entry into the community as provided by 18 U.S.C. § 3624(c). See Velo-Perez v. United States, Nos. 05-00543, 07-05401, 07-056333, 2008 WL 2156992, at *2-3 (N.D. Cal. May 21, 2008); United States v. Alagbe, No. CR 04-220-WHA, 2006 WL 1529981, at *4 (N.D. Cal. June 1, 2006). The Guidelines do not include deportable-alien status as a sentencing factor and departures based on factors not mentioned in the guidelines are infrequent. See United States v. Sera, 267 F.3d 872, 874-75 (8th Cir. 2001); United States v. Puente-Parga, No. 01-40024-03-SAC, 2003 WL 22213131, at *3 (D. Kan. Aug. 7, 2003). In a closely related context, the Tenth Circuit has held that a sentencing court cannot consider a defendant's possible deportation as a basis for downward departure unless the Attorney General

requests the Court to depart on that ground. See United States v. Aguilar, 105 Fed. Appx. 961, 962-63 (10th Cir. 2004); United States v. Gomez-Sotelo, 18 Fed. Appx. 690, 692 (10th Cir. 2001). In addition, a departure based on deportable-alien status would interfere with the authority of the Bureau of Prisons (BOP) to determine where a prisoner is incarcerated. Velo-Perez, 2008 WL 2156992, at *2 (citing Alagbe, 2006 WL 1529981, at *4 and United States v. Charry Cubillos, 91 F.3d 1342, 1344 (9th Cir. 1996)). Because defendant has not shown that counsel had a meritorious basis to seek a downward departure based on deportable-alien status, defendant cannot show that counsel's performance was deficient or prejudicial. See United States v. Valdez-Gomez, 15 Fed. Appx. 763, 764 (10th Cir. 2001) (no prejudice because defendant did not show reasonable probability that result of proceeding would have been different if counsel sought downward departure based on status as illegal alien).

To the extent defendant argues that his right to equal protection was violated, the Court notes that any disparity with respect to equal protection "is justified by the legitimate basis in protecting against the increased security risk of those facing deportation, the fact that those being deported do not need to integrate into the community, and Congress' plenary power over alien affairs." Alagbe, 2006 WL 1529981 at *4; see Velo-Perez, 2008 WL 2156992, at *2-3; Lara-Nava v. United States, Nos. 03-cv-1090, 04-cv-752, 02-cr-668, 2005 WL 1828733, at *2 (D. Utah July 29, 2005).

**VI. Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Accordingly, no evidentiary hearing is required. See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where factual matters raised by Section 2255 petition may be resolved on record).

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 (Doc. #34) filed April 28, 2008 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Enforce Appeal Waiver (Doc. #36) filed July 11, 2008 be and hereby is **SUSTAINED**.

Dated this 30th day of September, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge